## Case No. 11,600.

### In re READ.

[See 5 Fed. 721.]

## Case No. 11,601.

### READ v. BERTRAND.

[4 Wash. C. C. 514.] [1]

Circuit Court, D. Pennsylvania. April Term, 1825.

ASSUMPSIT—COUNTS THEREUNDER—FEDERAL JURISDICTION—CITIZENSHIP.

1. Assumpsit for goods sold and delivered, money had and received, and insimul computassent. Plaintiff employed defendant as his agent to sell a parcel of goods, for a certain commission. He sold a part of them, and received part of the purchase money, which, with the residue of the goods, he confided to a person whom he appointed as his clerk, and who ran off with the money and goods. The plaintiff cannot recover on the first and third counts, as no sale was made of these goods to the defendant, nor was any account settled and a balance struck between the parties. But the plaintiff is entitled to recover, under the second count, the amount of money received by defendant and lost by the perfidy of his own agent.

1 [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

2. What constitutes judicial citizenship, in reference to the jurisdiction of the courts of the United States.
[Explained in Toland v. Sprague, Case No. 14,076.]

Action to recover the balance of an account of sales rendered by the defendant to plaintiff. The case was, the plaintiff, a merchant of New York, entered into a contract with defendant, then residing in Philadelphia, in the year 1818, to furnish him with a large assortment of jewellery, which he was to take from place to place in the United States to sell for the plaintiff, upon a commission of five per cent. on the invoice prices, and one half of what he might sell them for beyond those prices, the same to be in lieu of expenses and all other charges. The defendant, after passing through many of the states with the articles so furnished by the plaintiff, and making sales of part of them, went to New Orleans, where he opened a store for the sale of the goods then on hand, and of other assortments of like goods sent to his store in New Orleans at different times. In 1819 the defendant came to Philadelphia for the purpose of meeting the plaintiff, and of pointing out the kind of goods suitable for the New Orleans market, to be sent him in future; having left a young man, named Flep, in charge of the store and of a sum of money which he had received from the sales of the plaintiff's goods, to be invested by him in a bill, to be remitted to the plaintiff. Whilst the defendant was in Philadelphia, he received a letter from a friend in New Orleans, informing him that Flep had packed up the goods left in his charge, and disappeared with them. He took with him also the money left by the defendant. The plaintiff then entered into an engagement with the defendant, that the latter should go to the Havana and to New Orleans, and elsewhere, in pursuit of Flep; he binding himself not to sue the defendant for four months. The defendant accordingly went to the Havana and to New Orleans in October, 1819, but was unsuccessful in overtaking Flep, or in recovering any part of the property taken away by him. The defendant wrote to the plaintiff from New Orleans, informing him of his ill success, and mentioning that he was there working for his living. He remained in New Orleans till May, 1820, when he came to Philadelphia, and from thence wrote to the plaintiff, informing him of his arrival, and that his object in coming on was to make some settlement with the plaintiff. The plaintiff's agent endeavoured to prevail upon the defendant to go to New York to see the plaintiff, which he declined, observing that he might thereby expose himself to be sued when distant from his friends. He said he had come to Philadelphia on purpose to go to gaol, and to take the benefit of the insolvent law. The defendant presented to the plaintiff's agent an account, in which, amongst other things, he charged his expenses in New Orleans on his

last trip, "whilst waiting to hear from the plaintiff." Early in June the defendant was arrested at the suit of the plaintiff, under a writ issued from this court, and remained in gaol till October, when he was discharged on common bail. He then returned to New Orleans, where he has remained ever since. The objections made to the plaintiff's recovery were: (1) That the defendant being a citizen of Louisiana at the time this suit was brought, and the plaintiff a citizen of New York, this court has no jurisdiction of the cause. (2) That this action will not lie, there being no settled account between the parties. That the proper action was account. At all events, the plaintiff cannot recover under the count for money had and received, without showing that the money for which the plaintiff's goods were sold had been collected.

Mr. Bradford, for plaintiff.
Mr. Philips, for defendant.

WASHINGTON, Circuit Justice (charging jury). The first point for the consideration of the jury is that which concerns the jurisdiction of the court, and this depends upon a mixed question of law and fact. What facts constitute a citizen of the United States a citizen of any particular state, are of the first description. Whether the evidence proves those facts or not, it is the latter description. The constitution of the United States having extended the judicial power of the United States to controversies between citizens of different states, there can be no question but that congress might have given jurisdiction to a circuit court sitting in one district, although the plaintiff and defendant were citizens of states other than that where the process was served, provided they were not citizens of the same state. But congress has thought proper to give the jurisdiction under the limitation that one of the parties, plaintiff or defendant, must be a citizen of the state where the suit is brought, and the other a citizen of some other state.

The plaintiff in this case then being a citizen of the state of New York, this court cannot entertain jurisdiction of this cause, unless you should be satisfied that the defendant was a citizen of this state at the time when this suit was brought. Judicial citizenship, or that species of citizenship intended by the constitution and law of congress, in reference to the jurisdiction of the courts of the United States, is nothing more or less than residence or domicil in a particular state, the person claiming to be a citizen of such state, being, at the same time, a citizen of the United States. This domicil may be changed from one state to another, if the removal be bona fide, and with intention to abandon his residence and to fix it permanently in the state to which he removes. But if the removal be for a temporary purpose, and with an intention to return to his former state of residence after that is accomplished, he is considered as a mere sojourner in the place of his temporary residence, and a citizen of the state from which he had departed. This intention to make the state he removes to the place of his permanent residence, is to be gathered from his conduct, his declarations, and from a variety of other circumstances, of all which the jury are the judges, and must decide upon the whole of the evidence laid before them.

The following appears to be the history of the defendant in relation to this subject: Whether he was a native of New Orleans or not does not appear, but it is in proof that he resided in that state from 1804 to 1809, when, being a minor, he removed with his mother and stepfather to this city, where he was bound an apprentice to a jeweller to learn that trade. He is therefore to be considered as a citizen of this state at the time he entered into the contract with the plaintiff which forms the ground of this suit, the domicil and consequent citizenship of the parent constituting the domicil and citizenship of their children during their minority, and afterwards, unless they change it. This contract was entered into in the year 1818, by which the defendant bound himself to take charge of a large assortment of jewellery belonging to the plaintiff, and to dispose of the same wherever he could find purchasers in the different states which he might visit, upon a certain commission in lieu of all charges and expenses, and to return to the plaintiff all such of the goods as he should be unable to sell. After travelling through many of the states in the character of a pedlar, and selling a part of the goods, he arrived at New Orleans in the same year, where he rented a store, and opened the remaining stock of jewellery, for the more convenient and advantageous disposition of it, as well as of other cargoes which the plaintiff was to send, and did send to him from time to time. It by no means appears in evidence that, when he left Philadelphia, it was his intention to fix his residence in New Orleans, or in any other place out of the state. In the summer of 1819 he returned to Philadelphia, with the professed intention to visit the plaintiff, and make a selection of the particular kind of goods suited to the New Orleans market, leaving his store open in that city, and his unsold goods under the care of a clerk whom he had employed to assist him, and to dispose of during his absence. This return then to Philadelphia being for a temporary purpose, is not to be considered as a change of domicil, if you should be of opinion that his residence in New Orleans was intended to be permanent, so as to have gained him a domicil there. In the autumn of that year he returned to New Orleans, by the way of the Havana, in pursuit of the treacherous clerk, in whose charge he had left his store and goods, and remained there working for his living, as he stated in one of his letters to the plaintiff in the spring of 1820. In May, 1820, he again returned to Philadelphia, in order, as he stated in his letter to the plaintiff of the 27th of that month, to come to some settlement with the plaintiff.

The first question for your consideration then is, whether the defendant, during his stay in New Orleans, was there with the intention of making it the place of his permanent residence? If he was not, then he continued a citizen of Pennsylvania up to the time when this suit was brought. If he was, then the next question is, whether his return to Philadelphia in May 1820, was for a temporary purpose merely, or with the intention of a permanent change of domicil. In the former case, he would be a citizen of Louisiana, and in the latter, a citizen of this state, when this suit was brought. The circumstances relied upon by the plaintiff to prove the latter proposition are the following: (1) That his only motive for visiting, opening a store, and residing in New Orleans, having been his connection with the plaintiff, in whose service he exclusively was, and that having been removed by the perfidy of his clerk, who had eloped with all, or nearly all the property left in his possession, the presumption is, that his return to Philadelphia in 1820 was with the intention to be reinstated in his former citizenship. (2) That in the account which, on such return, he presented to the plaintiff's agent, there was an item for his expenses during his last visit to New Orleans, waiting to hear from the plaintiff; which, it is said, he could not with any truth or justice assert, if he considered himself to be a permanent resident of New Orleans. (3) That he, or his stepfather, in his presence, stated to the plaintiff's agent, after his last return, that he had come home, for the purpose of being sued and imprisoned, in order to entitle him to the benefit of the insolvent law of this state, which, it is said, he could not have obtained, unless Pennsylvania was indeed his home, as he had called it.

To establish the former proposition, viz. that his return to Philadelphia was merely for a temporary purpose, the place of his domicil still continuing to be Louisiana, the defendant relies upon the following circumstances: (1) His letter of the 27th of May, 1820, showing the motive of his visit to Philadelphia. (2) His letter to the plaintiff from New Orleans. in 1820, before this return, in which he says that he is then in that city working for his living. (3) That as soon as he was discharged on common bail, he returned to New Orleans, thus showing that he considered that place as his home.

These circumstances, and on the others, the evidence to establish them are to be weighed by the jury. But it is to be remembered, that, as his change of domicil from Louisiana to Philadelphia is asserted by the plaintiff, and as it is quite clear that an intention to remove permanently from one state to another is never to be presumed, the burthen of proof to establish that point is upon the plaintiff; and that, unless you are entirely satisfied from the evidence that such was his intention, he ought to be considered as a citizen of Louisiana, provided you are also satisfied that he made himself a citizen of that state upon the principles before laid down.

2. If your opinion should be in favor of the plaintiff on the first point, your next inquiry will be whether the plaintiff is entitled to recover any thing and how much in this action? It is assumpsit, with three counts,—for goods sold and delivered, money had and received, and insimul computassent. There is clearly no evidence to support the first and last counts, since it is not pretended that the goods, for the value of which this action is brought, were sold by the plaintiff to the defendant, or that the parties had ever accounted together and struck a balance. To enable the plaintiff to succeed on the second count, the plaintiff must satisfy you not only that the defendant had sold the goods as stated in the account of sale which he rendered to the plaintiff, but that he had received the proceeds thereof, or that they had some way or other come to his use. He admits that he had received the sum of $2,674; but that he left the money with his clerk when he came from New Orleans to Philadelphia in 1819, with orders to procure for the same a bill to be remitted to the plaintiff, which money was totally lost, in consequence of the subsequent elopement of the clerk. But this, we think, furnishes no legal reason why the plaintiff should not recover that sum at least. By the contract between these parties, in 1818, the defendant was alone entrusted, and alone undertook to sell the goods at his own cost and charge; agreeing, in lieu of such, and of his trouble, to receive a certain commission. If he chose to employ a clerk to assist him in the business he had undertaken, it could only be at his own expense. If he chose to entrust the plaintiff's money in his hands, it was at his own risk. He had no power to delegate any part of his duties to the management of any other person.

The jury could not agree. and after being out a day and night, the counsel consented to their discharge.

[On the retrial the plaintiff recovered. Case No. 11,602.]